IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY TATUM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 21-cv-1101-NJR |
| | ) |
| ROB JEFFERYS, LU WALKER, | ) |
| DANIEL MONTI, JOHN DOE #'s 1-4, | ) |
| and C/O WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Bobby Tatum, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Tatum alleges he is housed in unconstitutional conditions of confinement at Shawnee in violation of the Eighth Amendment. He seeks monetary relief.

The case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## **The Complaint**

Tatum makes the following allegations in the Complaint (Doc. 1): While at Shawnee he has been held in Cell Houses 1 and 2, which have moldy ventilation vents, green and black mold around the window seals, and mold on the walls. There are large amounts of ants, spiders, and other bugs in the cells. The windows are drilled closed in the fall and winter, preventing Tatum from receiving fresh air (*Id*. at p. 3). In the spring and summer they are left open, preventing Tatum from closing the windows when it rains or during heat waves. Tatum notes that between October and December 2019, while he was housed in Cell House 2-B, Cell 24, the windows were drilled closed (*Id*. at p. 4). He describes the conditions as inhumane. He wrote grievances each time he was in an inhumane cell, and he was always moved to another cell which also had inhumane conditions. Tatum indicates that he was housed in Cell House 1-A, Cell 29, Cell 36, and Cell 61, Cell House 1-B, Cell 21, Cell House 2, Cell 77, and Cell House 2-B, Cell 52 (*Id*. at pp. 4-5). He never received a response from the grievance officer to his grievances while in Cell Houses 1 and 2 (*Id*. at p. 4).

Between October and November 2020, during a Covid-19 lockdown, the windows in Tatum's cell were drilled closed and covered in plastic tape, preventing fresh air from entering the cells (Doc. 1, p. 4). Tatum warned Shawnee Administration through several grievances, but he did not hear back from anyone. He was moved on a number of occasions after filing grievances. Tatum believes this was done in retaliation for filing the grievances because he was moved within Cell Houses 1 and 2, rather than transferred to Cell Houses 3 or 4 where the conditions were better (*Id*.).

As a result of being housed in moldy cells, Tatum developed several upper respiratory infections, and he continues to have pain in his stomach, lungs, both ribs, ears, and chest (*Id*. at pp. 4-5). He continues to cough up fluid and has been to the healthcare unit to receive medication and pain pills (*Id*. at pp. 4-5). After each visit to the healthcare unit, he filed grievances about the windows, mold, and insects (*Id*.). He also developed an eye infection after transferring to Cell House 1-A, Cell 29 (*Id*. at p. 5).

On May 20, 2021, Correctional Officer Williams took Tatum on a call pass for an attorney visit (*Id*. at p. 5). Williams told Tatum to strip completely naked and then sprayed his entire body with mace (*Id*.). He also had to expose himself, spread his buttocks a number of times, and move his genitals (*Id*. at pp. 5-6). Williams put a flashlight to his anus a number of times (*Id*.). Tatum alleges the search was improperly invasive and was done as punishment for exercising his rights. He believes this was done in retaliation because prior to filing grievances, he was not subjected to such an invasive search (*Id*. at p. 6). On May 21, 2021, Tatum wrote a grievance about the incident. John Doe #1 Grievance Officer failed to process the grievance, hindering Tatum's ability to exhaust his administrative remedies (*Id*). Tatum alleges John Doe #2 Assistant Warden, John Doe #3 Zone Lieutenant, and John Doe #4 Shift Commander are all liable because of their knowledge as supervisors (*Id*.).

## Preliminary Dismissals

As to John Doe #1 Grievance Officer, Tatum alleges that he failed to process his grievances which hindered the grievance process. He also alleges that by failing to process his grievances, John Doe #1 interfered with his right to access the courts because

he cannot proceed with his claims if he did not exhaust the grievance process (Doc. 1, p. 6). But the mishandling or denying of grievances by those not personally involved in the underlying constitutional violation does not state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007). Further, there is no protected due process right in the grievance process. *Owens*, 635 F.3d at 953-54; *George*, 507 F.3d at 609. To the extent Tatum alleges John Doe #1's actions interfered with his access to the courts, the unavailability of administrative remedies is not a bar to potential litigants bringing their claims. *See Hill v. Snyder*, 817 F.3d 1037, 1041 (7th Cir. 2016). Thus, Tatum fails to allege that John Doe #1's actions hampered his access to the courts.

Tatum also alleges that, in addition to the inappropriate strip search, Williams retaliated against him for filing grievances. He believes that the strip search was conducted in part because of the many grievances Tatum wrote about his conditions of confinement. There is no indication in the Complaint, however, that Williams was aware of these grievances. Nor is there any indication that any of the grievances were about Williams. Thus, Tatum fails to allege that the grievances were a motivating factor for Williams's actions. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (must allege that the protected activity was a "motivating factor" for the retaliatory action). Any claim of retaliation against Williams is, accordingly, **DISMISSED without prejudice**.

Further, to the extent that Tatum alleges that John Doe #'s 2, 3, and 4 are liable in their supervisory roles over John Doe #1 or C/O Williams, he also fails to state a claim.

4

These individuals cannot be liable because *respondeat superior*, or supervisory, liability is not recognized under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). Because Tatum only alleges that these individuals are responsible as supervisors and not any conduct of their own, the claims against them are also **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following three counts:

> **Count 1:** Eighth Amendment conditions of confinement claim against Rob Jefferys, Lu Walker, and Daniel Monti for housing Tatum in unsanitary conditions.
>
> **Count 2:** First Amendment retaliation claim against Rob Jefferys, Lu Walker, and Daniel Monti for transferring him to cells with inhumane conditions in retaliation for Tatum filing grievances.
>
> **Count 3:** Eighth Amendment cruel and unusual punishment claim against C/O Williams for the invasive strip search.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

### A. Count 3

Count 3, regarding an improper strip search by C/O Williams, is unrelated to his claims of unconstitutional conditions of confinement and retaliation in Counts 1 and 2. Accordingly, consistent with *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), and Federal Rules of Civil Procedure 18 and 20, the Court will sever Count 3 into a new case with a newly assigned case number.

### B. Remaining Claims

At this stage, Tatum states valid conditions of confinement (Count 1) and retaliation claims (Count 2) against Walker and Monti. Tatum alleges that he warned Shawnee Administration about his conditions through his numerous grievances but they never helped his situation; they only moved him to other, equally inhumane cells (Doc. 1, p. 4). But Tatum fails to state a claim against Rob Jefferys because he fails to allege that Jefferys was personally aware of the conditions at Shawnee or that he retaliated against Tatum. Instead, he merely alleges that Jefferys should have known by reason of his position as IDOC Director; he does not allege any personal knowledge of the conditions that Tatum faced at Shawnee. *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) ("The assumption…that anyone who knew or should have known of his…condition, and everyone higher up the bureaucratic chain, must be liable…is a bad one."). Thus, all claims against Rob Jefferys are **DISMISSED without prejudice**.

### Temporary Restraining Order

In addition to his Complaint, Tatum filed a motion that has been construed as a motion for temporary restraining order ("TRO") (Doc. 2). Tatum asks for protection for

himself and two witnesses he identified in his Complaint. He believes that once his Complaint is served and Defendants are aware of the allegations leveled against them, Tatum's life will be in danger because his allegations could lead to the closing of Shawnee (*Id*. at pp. 1-2). He also requests an order directing he be seen by an outside doctor for his repeated respiratory infections because he fears the infections could be a sign of lung cancer (*Id*. at p. 3).

A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

  1. a reasonable likelihood of success on the merits;

  2. no adequate remedy at law; and

  3. irreparable harm absent the injunction.

*Planned Parenthood v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

Without expressing any opinion on the merits of Tatum's other claims for relief, the Court concludes that a TRO should not issue in this matter. His allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard.* Instead, Tatum offers only his belief that his life will be in danger once Defendants learn of his Complaint. He offers no facts to support that belief. Further, to the extent that he seeks outside medical care for his respiratory infections, such a claim is not related to the claims in his Complaint. He does not allege that any defendant has been deliberately indifferent to his medical care. Although he states that doctors and nurses have downplayed his numerous infections (Doc. 2, p. 3), there are no medical claims in his Complaint. Accordingly, his request for injunctive relief is **DENIED**.

## Motion for Counsel

As to Tatum's motion for counsel (Doc. 3), he indicates that he has a mental illness and takes medications which will make it difficult to litigate the case on his own. Given the early stage of the litigation, however, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel ... cannot be gauged.").[2] Further, counsel is not needed at this time because the defendants have not yet been served and a discovery schedule has not been entered.

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

Thus, Tatum's motion for counsel (Doc. 3) is **DENIED** without prejudice. He may renew his request for the recruitment of counsel at a later date.

## Disposition

For the reasons stated above, Count 3 against C/O Williams is severed into a new case. In the new case, the Clerk of Court is **DIRECTED** to file the following documents:

- This Memorandum and Order;
- The Complaint (Doc 1);
- The motion to proceed IFP (Doc. 4); and
- The motion for recruitment of counsel (Doc. 3).

The only claims remaining in this case are Counts 1 and 2 against Lu Walker and Daniel Monti. All claims against Rob Jefferys are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Defendants Lu Walker and Daniel Monti: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Tatum. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Tatum, the employer shall furnish the Clerk with the defendant's current work address, or, if not

9

known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Tatum, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Tatum is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

   **IT IS SO ORDERED.**

   DATED:  December 15, 2021

                                              _____
                                              **NANCY J. ROSENSTENGEL**
                                              **Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**