IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY TATUM, | |
| Plaintiff, | |
| v. | Case No. 21-cv-1101-NJR |
| LU WALKER and DANIEL MONTI, | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Bobby Tatum, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center ("Shawnee"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On June 23, 2022, Tatum filed a motion for temporary restraining order (TRO) (Doc. 47). The Court directed Defendants to respond to the allegations that Tatum's cell had ants and spiders, poor ventilation, and temperatures over 100 degrees (Doc. 48). On July 21, 2022, Defendants filed a response to the motion (Doc. 55). Tatum filed a reply, which also served as a motion for discovery (Doc. 58). Defendants filed a response to his discovery motion (Doc. 60).

## BACKGROUND

On September 7, 2021, Tatum filed his Complaint alleging unconstitutional conditions of confinement at Shawnee (Doc. 1). He alleged while in Cell Houses 1 and 2, he was subjected to mold, insects, and windows that were drilled closed in the fall and

winter (Doc. 14, p. 2). Tatum identified numerous cells where he experienced these conditions including: Cell House 1-A, Cell 29, Cell 36, and Cell 61, Cell House 1-B, Cell 21, Cell house 2, Cell 77, Cell House 2-B, Cell 52 and Cell 24 (*Id.*). Tatum also alleged that he was moved throughout Cell Houses 1 and 2 after he wrote grievances about his conditions, which he believes was done in retaliation (*Id.*). He was allowed to proceed on the following two counts:

> Count 1: Eighth Amendment conditions of confinement claim against Lu Walker and Daniel Monti for housing Tatum in unsanitary conditions.
>
> Count 2: First Amendment retaliation claim against Lu Walker and Daniel Monti for transferring him to cells with inhumane conditions in retaliation for filing grievances.

(Doc. 14, p. 5).[1]

On June 23, 2022, Tatum filed an emergency motion for a TRO because he had recently been placed in segregation (Doc. 47). Tatum noted that Monti was no longer the warden at Shawnee, but that Walker was still at the prison—although not as the head warden (*Id.* at p. 1). He alleged continued retaliation from C/O Walker, who was originally a defendant in this case, but the claims against him were severed into a new case. Tatum was placed in segregation for an incident unrelated to this case, and he alleged that the cell was inhumane and was filled with spiders, had closed windows with no ventilation, and a covered door (*Id.* at p. 2). He alleged that he could barely breathe with the closed-up windows and door, and the temperatures reached over 100 degrees

---

[1] A third claim against C/O Williams for an invasive strip search was severed into another case because it was unrelated to his other claims (Doc. 14, p. 6).

(*Id*.). Tatum sought a transfer from Shawnee. Defendants were ordered to respond to Tatum's allegations regarding the conditions of his new cell (Doc. 48).[2]

On July 21, 2022, Defendants Monti and Walker filed a response (Doc. 55) indicating that Tatum was no longer housed in the cell at issue in his motion. According to Tatum's living unit history, Tatum was only housed in the segregation unit from June 4-29, 2022 (Doc. 55-1). On June 3, he was placed in S:01:26:L1, a segregation cell (*Id.* at p. 1). On June 9, 2022, he was moved to S:02:15:L1. On June 22, 2022, he was moved to two different segregation cells: S:01:06:L1 and S:01:26:L1. Finally on June 29, 2022, he was moved to 03:A:21:L1, a general population cell (*Id*.). In Tatum's reply brief, he does not indicate that he is still located in the segregation unit, but acknowledges that he is in 03:A cell 21. He states that he was bitten by either a spider or another insect while in his current cell (Doc. 58, pp. 2, 7).

## LEGAL STANDARDS

A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction

---

[2] To the extent Tatum alleged new claims of retaliation from individuals who were not currently defendants in this case, he was instructed to file a new lawsuit after exhausting his administrative remedies (Doc. 48).

is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary

injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

ANALYSIS

A. Motion for TRO

Simply put, Tatum is not entitled to injunctive relief at this time. He is not currently housed in any of the cells at issue in this lawsuit. He is not even currently housed in a segregation cell, which was the cell at issue in his motion for injunctive relief. He does not deny that he is not currently in segregation, and the records show that he was moved from segregation on June 29, 2022 (Doc. 55-1, p. 1). Although Tatum indicates that he is now in 03:A cell 21, that is also not one of the cells at issue in this case. He also does not describe the conditions of the cell other than to say there are insect issues and he was bitten by either a spider or some other insect (Doc. 58 pp. 2, 7). But he filed a grievance about his current cell, asking that it be sprayed for insects, and he fails to indicate the status of that grievance or whether the cell was sprayed (*Id.* at p. 7). Nor is there any indication that Walker or Monti were involved in his current placement. Tatum acknowledges that Monti is longer a warden at Shawnee and Walker is now warden of programs (Doc. 55-2). Thus, there is no indication that Tatum is currently housed in any of the cells at issue in his lawsuit or that the two defendants in this case were involved in his current placement. As to the conditions of his current cell, he has an avenue for relief

Page 5 of 7

for these new claims through the prison grievance system. Thus, his motion for TRO is **DENIED**.

### B. Discovery Request

Tatum's reply brief includes a motion to compel additional discovery documents (Doc. 58, pp. 1-2). He indicates that Defendants failed to produce a number of grievances relevant to his claims, including Grievance Nos. 202203153E, 202203154E, 202223127, 20223126, and 20223125. Tatum indicates the grievances were received and denied by the grievance officer (*Id*. at p. 2). Defendants argue that Tatum did not try to resolve the issue with them prior to filing his motion, that discovery is limited to the initial disclosures, and that if they decide to file a motion for summary judgment on the issue of exhaustion they will provide copies of Tatum's relevant grievances (Doc. 60, p. 2).

Although Defendants are correct that *merits* discovery is currently stayed, the Court's scheduling order provides for the production of initial disclosures (Doc. 40). These disclosures include "grievances, along with any responses or other related materials, such as grievance logs and counselor's notes" (Doc. 40, p. 2). Nothing in the initial disclosures indicates that Defendants can wait until they file their motion on the issue of exhaustion to produce Tatum's grievances. The scheduling order clearly gave Defendants a deadline to produce grievances by June 13, 2022. Defendants are required to produce Tatum's grievances. Thus, Tatum's motion is not premature as Defendants argue.

To the extent that Defendants argue that Tatum is seeking grievances which were filed in 2022 and, thus, would not be relevant to his claims, the Court does not agree.

Although Tatum must exhaust his administrative remedies prior to filing suit, later filed grievances on Tatum's cells might be relevant to a claim that he was thwarted in exhausting his administrative remedies. Thus, Defendants should provide Tatum with any grievances he filed on the issue of his conditions of confinement from the dates at issue in the Complaint until the present. Defendants have two weeks to produce Tatum's relevant grievances, his grievance logs, and counselor's notes. To the extent Tatum asks for sanctions and judgment in his favor due to Defendants' failure to disclose all grievances, the Court **DENIES** that request. As of this date, Defendants have not filed a dispositive motion on the exhaustion issue and, although the disclosures are late, Tatum has not suffered any prejudice at this time.

## Conclusion

For the reasons stated above, Tatum's motion for TRO (Doc. 47) is **DENIED**. His motion to compel discovery (Doc. 58) is **GRANTED in part**. Defendants are **ORDERED** to disclose Tatum's relevant grievances, his grievance logs, and counselor's notes on the issue of his conditions of confinement—from the dates at issue in the Complaint until the present—by **August 31, 2022**. All other requested relief is **DENIED**.

**IT IS SO ORDERED.**

DATED:   August 17, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**