IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BOBBY TATUM,<br><br>  Plaintiff,<br><br>v.<br><br>LU WALKER and DANIEL MONTI,<br><br>  Defendants. | Case No. 21-cv-1101-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Bobby Tatum, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Shawnee Correctional Center ("Shawnee") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Tatum alleges that he was housed in unconstitutional conditions of confinement at Shawnee in violation of the Eighth Amendment.

This matter is before the Court on Tatum's motion for order Temporary Restraining Order ("TRO") and emergency injunction to have IDOC and Shawnee properly address emergency grievances (Doc. 70). Defendants filed a response in opposition to the motion (Doc. 82). Tatum filed a reply (Doc. 83).

### BACKGROUND

On September 7, 2021, Tatum filed a Complaint (Doc. 1) alleging that he was subjected to unconstitutional conditions of confinement while housed in Cell Houses 1 and 2. Specifically, the cells had moldy vents, green and black mold around the window

seals, and mold on the walls. The cells were also infested with ants, spiders, and other bugs (Doc. 14, p. 2). The windows were drilled closed in fall and winter, preventing fresh air, and left open in spring and summer, subjecting Tatum to the outside elements (*Id.*). He identified the cells at issue as Cell House 1-A, Cell 29, Cell 36, and Cell 61, Cell House 1-B, Cell 21, Cell House 2, Cell 77, and Cell House 2-B, Cell 52 (*Id.*). He was allowed to proceed on the following two counts:

> Count 1: Eighth Amendment conditions of confinement claim against Lu Walker and Daniel Monti for housing Tatum in unsanitary conditions.
>
> Count 2: First Amendment retaliation claim against Lu Walker and Daniel Monti for transferring him to cells with inhumane conditions in retaliation for Tatum filing grievances.

(Doc. 14, p. 5).

Since the filing of his Complaint, Tatum has filed four motions for temporary restraining order. His first motion, filed with his Complaint (Doc. 2), argued that his life would be in danger once Defendants learned of the Complaint. The motion was denied because he failed to offer any facts to support that claim (Doc. 14, p. 8).

On February 7, 2022, Tatum filed a motion seeking leave to file an emergency motion for temporary restraining order (Doc. 25). Tatum alleged that he was being denied care for kidney stones and he believed it was in retaliation for filing his lawsuit. The motion was denied because the medical care claims were new claims unrelated to his current lawsuit (Doc. 26). On April 15, 2022, Tatum filed another motion for temporary restraining order (Doc. 37) arguing that the defendants were placing his life in danger. He referred to issues with the mail and his kidney stones. The motion was again denied

because it was unrelated to the claims in his lawsuit. Tatum also failed to indicate how the defendants in this case were placing his life at risk (Doc. 39).

On June 23, 2022, Tatum filed another motion for temporary restraining order (Doc. 47). The motion alleged that he was being retaliated against by Sergeant Williams for rulings in Case No. 21-cv-1697-DWD (Doc. 47). Another part of his motion alleged he was again housed in a cell with ants, spiders, poor ventilation, and temperatures over 100 degrees. Although Williams had previously been a defendant in this case, the claims against him were severed into a new case. The motion was denied in part and Tatum was directed to file any request for injunctive relief in the pending case against Williams (Doc. 48). To the extent that he raised allegations regarding his cell conditions, Defendants were directed to respond.

While that motion was still pending, Tatum filed another motion for temporary restraining order on July 5, 2022 (Doc. 51). His new motion alleged that he had been assaulted by an unknown officer. His motion was denied as unrelated to the claims in this case (Doc. 52).

Tatum's June 2022 motion was ultimately denied because Tatum was moved from the cell at issue in the motion. Further, his current cell was not one of the cells at issue in his case, and he did not describe the conditions of his current cell.

On October 7, 2022, Tatum filed his fifth and most current motion for temporary restraining order (Doc. 70). Tatum alleged that on September 16, 2022, he was placed in 1 Cell House, Cell 17 and was subject to the same conditions of confinement as alleged in his Complaint. Specifically, he alleged that there were numerous insects in his cell due to

a hole in the window screen (*Id.*). He stated that he had a number of insect bites that would not heal. Tatum further alleged that he had written numerous emergency grievances that were not answered. He also raised claims regarding his medication, assaults, and disciplinary tickets. To the extent he raised new claims, the motion was denied but Defendants were directed to file a response regarding the conditions of his new cell.

In response, Defendants argue that they have no personal involvement in Tatum's current allegations regarding the conditions of his cell because they are no longer the wardens of Shawnee. Monti is the day-to-day warden at Centralia Correctional Center, and Walker is the assistant warden of programs at Shawnee. To the extent Tatum has received spider/bug bites in recent months, Defendants argue that those bites have been treated and are healing (Doc. 82-1, pp. 50-51, 57-58, 62-63).

Tatum objects to the use of his medical records, arguing that they are unreliable (Doc. 83). He argues that the Court should, instead, review video footage of the healthcare unit during the relevant time periods. He also asks for video footage of an incident on June 22, 2022, where chemical agents were sprayed on Tatum, as well a visit with the nurse practitioner from May 2022 where he presented to the healthcare unit with blood in his urine. He also alleges that he saw the nurse practitioner on October 18, 2022, for spider bites and the bites were not healing (*Id.* at p. 2).

## LEGAL STANDARDS

A TRO may issue without notice only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result

to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Such injunctive relief is also warranted "to prevent a substantial risk of serious injury from ripening into actual harm." *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). The same legal analysis is used to determine whether a TRO or a preliminary injunction is warranted.

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable

balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

## ANALYSIS

To the extent that Tatum again raises issues in his reply brief regarding treatment he received for blood in his urine and an incident in June 2022 where he was sprayed with a chemical agent, his request for injunctive relief is **DENIED**. As the Court has stated on multiple occasions, these claims are new claims which are unrelated to the claims in his Complaint. In order to pursue these claims, he would need to file a new lawsuit against the individuals who were involved in these incidents.

Turning to Tatum's claims regarding his current conditions of confinement, Tatum fails to meet the standard for injunctive relief. There is no indication that either defendant was personally involved in Tatum's recent placement within Shawnee. Although both Monti and Walker served as the day-to-day warden at Shawnee at one point, neither currently serve in that position. Walker is now the assistant warden of programs, and Monti left Shawnee in April 2022 (Doc. 55-2). Individual liability under Section 1983 requires personal involvement and there is no evidence that either defendant has any

current personal involvement in placement decisions. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("A damages suit under [Section] 1983 requires that a defendant be personally involved in the alleged constitutional deprivation.").

Further, Tatum sued each defendant in his individual capacity for money damages for past conduct (Doc. 1, p. 8). To the extent he alleges that new officials at Shawnee are retaliating against him and placing him in unconstitutional conditions of confinement, that would constitute a new claim. Tatum would need to file a new lawsuit to address these new claims.

Finally, the Court notes that Tatum alleges he suffered bug bites as a result of being placed in this new cell. Tatum indicates in his motion that he was placed in the new cell on September 16, 2022 (Doc. 70, p. 1). But the medical records demonstrate that Tatum suffered the spider bites prior to being placed in the cell identified in his motion. On September 18, 2022, Tatum presented to the healthcare unit complaining of spider bites. He informed staff that he received the spider bites one month prior to his visit (Doc. 82-1, p. 62). The records indicate that Tatum has been complaining about the same spider bites since August 6, 2022 (*Id*. at pp. 50-51, 57-58).[1] In his reply brief, Tatum does not deny that his spider bites were from prior to his placement in the cell identified in his motion.

---

[1] Tatum objects to the use of the medical records in his reply brief, arguing that the documents have been altered and/or falsified, but he fails to offer any proof to support his objection. He argues that he saw a nurse practitioner for his yearly physical on May 26, 2022, and seems to argue that these records were not included in Defendants' exhibit. But the records do reflect a May 26 visit in the healthcare unit (Doc. 82-1, p. 32). Tatum also points to an interaction with officers on June 22, 2022, and argues that the records do not reflect that he was denied medical care on that date. But it is not clear from his brief whether he actually went to the healthcare unit on that date. The Court does not find that the lack of this unrelated record taints the credibility of the rest of the medical records. Tatum simply fails to demonstrate that the records are unreliable.

Instead, he argues that he was also seen by the healthcare unit on October 18, 2022, and the spider bites were not healing. But there is no evidence to suggest that the spider bites came from the cell he was placed in on September 16, 2022, nor is there any evidence he has suffered from insect bites since being placed in this new cell. Thus, the Court finds that Tatum has not shown a likelihood of success on the merits for his claims regarding this new cell.

## CONCLUSION

For the reasons stated above, Tatum's motion for temporary restraining order (Doc. 70) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   November 23, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**