IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BOBBY TATUM,

                Plaintiff,

v.

LU WALKER and DANIEL MONTI,

                Defendants.

Case No. 21-cv-1101-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Bobby Tatum, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Shawnee Correctional Center ("Shawnee") brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His Complaint (Doc. 1) asserts claims of unconstitutional conditions of confinement (Count 1) and retaliation (Count 2) against Lu Walker and Daniel Monti.

This matter is before the Court on a summary judgment motion filed by Walker and Monti (Docs 64, 65). Defendants argue that Tatum failed to exhaust his administrative remedies before filing suit. Tatum filed a response in opposition to the motion (Doc. 67). On December 8, 2022, the Court held an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008).

### BACKGROUND

After an initial screening of Tatum's Complaint (Doc. 1), he was allowed to proceed on the following counts:

> Count 1: Eighth Amendment conditions of confinement claim against Lu Walker and Daniel Monti for housing Tatum in unsanitary conditions.
>
> Count 2: First Amendment retaliation claim against Lu Walker and Daniel Monti for transferring him to cells with inhumane conditions in retaliation for Tatum filing grievances.

(Doc. 14, p. 5).

Specifically, Tatum alleged that while housed in Cell Houses 1 and 2 he was subjected to mold, insects, and lack of fresh air (*Id.* at p. 2). Tatum identified a number of cells where he faced unconstitutional conditions, including: Cell House 1-A, Cell 29, Cell 36, and Cell 61, Cell House 1-B, Cell 21, Cell House 2, Cell 77, and Cell House 2-B, Cell 52 (*Id.*). Tatum's Complaint alleged that he wrote grievances about his conditions, but he never received a response (*Id.*). Instead, Tatum claims that in response to submitting grievances, he was moved to different cells within Cell Houses 1 and 2, rather than being placed in Cell Houses 3 or 4 where conditions were better, which he believed was in retaliation for filing grievances.

Walker and Monti argue that Tatum failed to file any grievances on either of his claims. The grievance logs show that Tatum filed one emergency grievance, received July 7, 2020, which grieved the conditions of his cell, particularly that there were ants in the cell (Doc. 65-3, p. 1). The grievance was deemed not an emergency and returned to Tatum to be submitted through the ordinary grievance process (*Id.*). There is no record of the grievance ever being resubmitted to Tatum's counselor (Doc. 65-4, pp. 1-2).

On September 3, 2021, the Administrative Review Board ("ARB") received a grievance from Tatum dated August 20, 2021 (Doc. 65-6). Tatum complained that he had

a number of unresolved grievances from October and November 2019, as well as October and November 2020, about the conditions of his cells in Cell Houses 1 and 2 (*Id*. at pp. 6-7). He specifically stated he wrote grievances on August 2, 2021, August 12, 2021, and May 21, 2021, but never received a response to any of them (*Id*. at p. 7). Because he never obtained responses to his grievances, he asked the ARB to intervene and address the issues with his cells (*Id*. at pp. 6-7). The ARB returned the grievance because Tatum failed to attach a counselor or grievance officer response (*Id*. at p. 5). He also was directed to contact his counselor about his prior grievances (*Id*.).

Tatum's cumulative counseling summary does not indicate that he spoke with his counselor about missing grievances (Doc. 65-4, pp. 1-2). The counseling summary shows a number of routine counselor contact visits with Tatum, but there is no indication that he discussed the missing grievances (*Id*.). Further, the counseling summary shows a number of emergency grievances, some deemed an emergency, and some returned to Tatum as not an emergency, received by the grievance office (*Id*.).

Tatum argues that Defendants did submit him to unconstitutional conditions. He also argues that after he filed his July 2020 emergency grievance, he was moved to another cell and chose not to further pursue the grievance because the issue was mooted by his transfer. He further argues that Defendants retaliated against him by moving him every time he submitted a grievance, which also made the grievance process unavailable. In other words, Tatum claims that the staff at Shawnee would simply move him to another cell but would not respond to the grievance. The conditions of the cells caused him to develop an upper respiratory infection. After being treated by medical staff for the

infection, on August 21, 2022, he alleges he wrote a grievance to the ARB asking that they review his grievances. Further, according to Tatum, the Shawnee handbook did not tell him how to proceed when he failed to receive responses to his grievances.

## Legal STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Tatum was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

>contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code

§504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

As a preliminary matter, to the extent that Tatum's response asks for counsel and for judgment on the merits of his claims, those requests are **DENIED**. The Court found Tatum capable of representing himself at the *Pavey* hearing as the issues were straightforward and Tatum was able to testify coherently about his grievances. Further,

to the extent that Tatum took issue with Defendants only providing grievance logs through early 2022, the Court **DENIES** his request for judgment on the merits. Tatum was provided grievances through March 2022. Further, he filed his Complaint on September 8, 2021, thus any grievances filed in 2022 would not be relevant to the issues in this case.

As to whether he exhausted his administrative remedies, Tatum argues that he did not receive responses to any grievances that he submitted regarding the conditions of his cell. If true, then he would have been thwarted in his attempts to exhaust this grievance. *See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2008) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response). But the Court does not find Tatum's testimony as to his grievances to be credible. As to the July 2020 emergency grievance, Tatum stated in his response that he received a response from the warden but chose not to pursue the matter further because he had been moved to a new cell, Cell 1-A-29 (Doc. 67, p. 2). The Court notes that there are no documented transfers in July 2020 for Tatum (Doc. 67, p. 7; Doc. 65-1). Tatum received his grievance back on July 20, 2020, when it was deemed a non-emergency (Doc. 65-4, p. 2). Tatum remained in Cell 1-A-61 from March 19, 2020, until December 7, 2020, when he was transferred to Cell 1-A-29 (Doc. 65-1). Thus, his grievance was not moot when he received a response.

Tatum's testimony at the evidentiary hearing about the July grievance also contradicted his statements in his response. At the evidentiary hearing, for the first time, Tatum testified that when he received the grievance back as a non-emergency, he

accidently submitted it again through the mail. He also testified that when Lu Walker returned the original grievance, she included a response that Tatum testified was intimidating (Doc. 58, p. 5). He testified this threatening response caused him to stop filing grievances. When he accidently re-submitted the grievance with some mail through the prison mailbox, sometime around July 24, 2020, the grievance came back with the response section whited-out (*Id.*). His testimony at the evidentiary hearing was clearly contradictory to his earlier response indicating that he was moved after submitting the grievance and believed the grievance moot. Although the Court acknowledges that there is white-out on the response section, there is no indication that it contained threatening statements. Tatum does not have the original grievance, and there is no indication in the counseling summary that it was received by his counselor after being returned (Doc. 65-4). The Court finds that Tatum's contradictory statements about the July 2020 grievance undermines his credibility. There is simply no evidence to support his testimony that he was threatened, and the grievance was not mooted by a transfer because he was not transferred in July 2020 as he originally stated. Instead, it appears that Tatum merely chose not to pursue the grievance any further. Thus, the grievance was not fully exhausted.

Tatum also testified that he submitted a grievance in October 2019 about the windows in his cell being shut and that he did not receive a response because the Covid-19 pandemic was going on and the prison did not respond to grievances. But as the Court pointed out at the hearing, the Covid-19 pandemic in the United States did not start in October 2019. When confronted with the contradiction, Tatum changed his story to testify

that the flu was bad and staff did not want to touch the paperwork. The cumulative counseling summary does not indicate that a grievance regarding cell conditions was received in October 2019 (Doc. 65-4, p. 4). The summary *does* indicate that a grievance regarding medical and doctor bills was received in October 2019 and returned to Tatum (*Id.*). That grievance was ultimately resolved on October 24, 2019 (*Id.*). The counseling records contradict his testimony that grievances were not being received or returned during this time period.

Tatum also maintained that he was transferred every time he submitted a grievance. He testified that he submitted grievances in October and November 2019 and in January 2020 and that each time he was transferred to another cell. Although the records reflect routine cell transfers on October 6, 2019, and January 22, 2019, there is no indication that there was a transfer in November when Tatum alleged he submitted a grievance (Doc. 65-1). Further, as previously noted by the Court, there was no transfer after his July 2020 grievance (*Id.*). And the records reflect these were all routine transfers (*Id*). There is no evidence in any of the records to suggest that he was transferred in response to grievances.

The evidence in the record also does not support Tatum's claims regarding his August 2021 grievance to the ARB. The grievance states that he was not getting responses to grievances he had submitted in October and November 2019 and in October and November 2020, but Tatum has never pointed to any grievances he allegedly submitted in October and November 2020. In fact, he testified at the evidentiary hearing that he did not submit another grievance after July 2020 until he submitted his grievance to the ARB

on August 20, 2021. Further, he acknowledged that by the time he received the ARB's response he had already filed his Complaint (Doc. 1). The ARB response is dated September 8, 2021 (Doc. 65-6, p. 5), and his Complaint was filed on September 7, 2021 (Doc. 1). He also acknowledged that he did not try to pursue his grievance either before submitting it to the ARB or after he received it back from the ARB with specific directions to submit the grievance to the counselor and grievance officer (Doc. 65-6, p. 5). He chose not to make any attempt to exhaust the grievance.

As a result, the Court finds that Tatum did not exhaust his administrative remedies. The records indicate that he had the ability to pursue grievances. There is no evidence to suggest he was thwarted or that any of the grievances were moot. He simply chose not to file grievances, or pursue grievances he did file, on the conditions of his cells. Thus, Tatum failed to exhaust his administrative remedies prior to filing suit.

## Conclusion

For the reasons stated above, the summary judgment motion filed by Defendants Daniel Monti and Lu Walker is **GRANTED** (Docs. 64, 65). Tatum's claims are **DISMISSED** for failure to exhaust his administrative remedies. The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: January 6, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**